C. BROOKS FOSTER *v.* THE MAYOR AND COUNCIL OF WIL-
MINGTON.

*Municipal Corporations—Power of Mayor—Appointment of Special Police.*

The Mayor of the City of Wilmington has no power or authority to appoint the dog catcher in said city a special officer to act as constable or policeman.

(*New Castle, May, 1889.*)

APPEAL from a Justice of the Peace.

The suit was brought by Foster to secure the payment of $100, which he claims is due him for services rendered as special officer while he was dog catcher under Mayor Rhoads.

Foster testified at length to the dates on which he served as special officer and declared that the mayor had requested him to do so.

Councilman William H. Quinn testified that Foster had purchased a suit of police clothing at his place, saying that he wanted it for his own protection in his duties as dog catcher.

Ex-Mayor Calvin B. Rhoads testified that Foster had been appointed dog catcher by him, and had been sworn in as a special officer for his own protection. He never put in a claim for extra services until after he had resigned as dog catcher. He had been allowed to do police duty at his own request until the regular officers objected, when he was stopped.

John J. Dougherty, ex-chief of police, testified that he was chief of police from June 30, 1885, until May, 1888. He could not mention any particular occasion on which he had detailed Foster as an officer. Foster had acted in that capacity, however, and he compared favorably with other officers.

Ex-Police Sergeant Harry C. Taylor testified: Witness re-

membered the accident to Charles Shields. That night he was called into the office and Mayor Rhoads said Foster is going up to to take Shields' place. Told Rhoads that he did not want him, but Rhoads replied: "He has been asking to go up there, let him go." Witness never recognized Foster as a police officer. If he failed to report, witness did not ask for him. Witness would not believe Foster on oath. Cross-examined by Mr. Vandegrift, witness said that Foster wore a uniform.

Francis S. Sawdon, Chairman of the Police Committee of City Council, testified that his committee had never been called upon to confirm the appointment of Foster as a special officer. Cross-examined: Witness said he never knew Foster as anything but a dog catcher. Foster asked the committee to pay for his clothes, but it refused.

Augustus F. Messick, clerk of City Council, was called to prove bills which Foster had been paid for services as dog catcher. Mr. Vandegrift objected to such evidence, and the Court sustained the objection.

Ex-Special Officer Harry Schoor testified that he never knew Foster as anything but dog catcher. Witness remembered the accident to Hamilton, who was turnkey. Witness had charge of the police station in the absence of the chief during that time. Had heard Foster ask to go to New Castle, giving as a reason that he had business there, and the city might as well pay his fare. Wit-Witness supposed he would have to believe Foster if he was on oath.

*Mr. Vandegrift* recalled Francis T. Sawdon, who, in answer to questions from Mr. Vandegrift, said he had heard Mayor Rhoads say before the Police Committee that Foster made a good officer, but the witness did not know whether he meant dog catcher or policeman. Foster had asked for money for police clothing, but

it was refused. On cross-examination by Mr. Turner witness said that Mayor Rhoads never said Foster was a special officer.

C. Brooks Foster was called and testified that he had done police duty and had been recognized as an officer by the sergeants.

*Lewis C. Vandegrift,* for the plaintiff :

The mayor has the right under the charter to employ city constables, whether special or otherwise.

If it is claimed in this case that in employing Foster he was exceeding his authority, then the answer is :

1. That the knowledge of what number of policemen was the limit was a fact peculiarly within the knowledge of the corporation and not within the knowledge of Foster. Under such circumstances the city is estopped to deny its agent's (the mayor's) authority to employ Foster.

*The Royal &c. v. Turquand,* 6 El. & Bl., 327; *Knox v. Aspenwall,* 21 How., 544; *Town of Colona v. Eves,* 92 U. S. @ 490; *Hackett v. Ottawa,* 99 U. S., 95 ; 2 *Morawitz,* P. Cor. (2 Ed.), § 587.

That if the hiring in this case was in the obvious line of duty of the mayor, then the doctrine of *ultra vires* cannot be interposed to relieve the city from the contract.

*Moss v· Rossie, &c.,* 5 Hill, 137 @ 140 ; *Mayor &c. v. Norfolk &c.,* 4 El. & Bl., 397 @ 443, S. C., 30 E. L. & Eq., 143.

That the doctrine of *ultra vires* should not be invoked for or against a corporation where it would defeat the ends of justice or work a legal wrong.

*Ry Co. v. McCarthy,* 96 U. S., 267 ; *Whitney A. Co. v. Barlow,* 63 N. Y., 62.

That a contract once executed by either party, will be held binding upon the other, although the contract may have involved the authorized exercise of a corporate power.

27

*Gas Co. v. San Francisco,* 9 Cal., 469 ; *Whitney A. Co. v. Barlow,* supra.; *Oil City Ry. v. Pa. T. Co.,* 83 Pa., 81–160–166; *Alleghaney City v. McClustion,* 14–160–83 ; *City of E. St. L. v. E. & C. Co.,* 98 Ill., 414 ; *Pamsh v. Wheeler,* 22 N. Y., 494.

That even admitting the hiring was *ultra vires,* yet city officials knew of it and did not disavow the city's liability. This amounted to a ratification.

*Kelsey v. Nat. Bk.,* 69 Pa. St., 426, 429 ; *Buckley v. Derby F. Co.,* 2 Conn., 256–7.

That even if it were *ultra vires* as to the services of Foster as a city constable, yet it was not so far as he served as a prison keeper, and there is nothing to prevent his recovery for this service.

*William T. Lynam* and *Henry C. Turner,* for the defendant:

" That if it is determined by the jury that the mayor appointed C. Brooks Foster a substitute on the police force, the mayor lacked the assent of the Police Committee of Council ; the mayor acted *ultra vires* and the city is not liable."

Parties dealing with the agent or officers of a municipal corporation, must at their peril, take notice of the limits of the powers both of the municipality and of those who assume to act as its agents or officers. If his act is beyond the limits of his authority the municipality is not bound.

29 Md., 85 ; 15 Conn., 495; 48 Md., 272.

Though a private agent, acting in violation of specific instructions, yet within the scope of a general authority, may bind his principal, the rule, as to the effect of a like act of a public agent, as the officer of a municipal corporation, is otherwise.

A municipal corporation cannot be held liable for the unauthorized acts of its agents though done *officii colore,* without some corporate act of ratification or adoption.

18 Md., 276 ; 30 Md., 218 ; 17 Mass. Star page 29.

As a general rule, a municipal corporation is not responsible

for the unauthorized and unlawful acts of its officers, though done *colore officii*, it must further appear that the officers were expressly authorized to do the acts, by the corporation, or that they were done *bona fide* in pursuance of a general authority to act for the corporation on the subject to which they relate, or that in either case, they were adopted and ratified by the corporation.

15 N. Y., 512; 71 N. Y., 584; 19 Pickering, 511.

If the mayor was not authorized to appoint specials, except under special conditions, he could not bind the municipal corporation by his unauthorized act.   To bind the town he must have had the power from the town.   The plaintiff could have ascertained if he was legally and properly appointed.

8 Allen, 114; 10 Allen, 528; 109 Mass., 214; 128 Mass. 506.

General principal of law, that the agents, officers or even city council of a municipal corporation cannot bind the corporation by any contract which is *ultra vires*, or is against public policy.

13 Pickering, 343; 68 N. Y., 23; Dillon's M. C. Secs. 371-373–381.

COMEGYS, C. J., charged the jury.   *First.* Had the mayor authority to appoint the plaintiff a constable or policeman of the city; and if so, *Second*, did he in fact appoint him a constable or policeman of it; for if he had not the authority to appoint him, then the plaintiff cannot recover against the city, whatever remedy he may have against the mayor for his services.   He then said it was the opinion of the Court that the mayor had no authority under the charter and ordinances of the city to appoint him a constable or policeman to perform the services for which the action had been brought.   .

Verdict for the plaintiff.